The **PROCTER & GAMBLE COMPANY AND SUBSIDIARIES,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Case No. 1:08–cv–00608.

United States District Court,
S.D. Ohio,
Western Division.

June 25, 2010.

858

Daniel H. Schlueter, Kent L. Jones, Victoria A. O'Connor, Sutherland Asbill & Brennan LLP, Washington, DC, Mark Alan Vanderlaan, Cincinnati, OH, for Plaintiff.

Christine Hooks, Lisa L. Bellamy, Robert J. Kovacev, Karen A. Smith, Washington, DC, Brian Richard Harris, Julie Ciamporcero Avetta, U.S. Department of Justice, Washington, DC, for Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE THE "GROSS RECEIPTS" RESEARCH CREDIT ISSUE (Doc. 43) AND DENYING DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 66)**

TIMOTHY S. BLACK, District Judge.

This civil action is before the Court on the parties' cross motions for partial summary judgment concerning the "Gross Receipts" research credit issue (Docs. 43, 66) and the parties' responsive memoranda (Docs. 45, 47, and 95).

## I. BACKGROUND

Ultimately, Defendant United States of America determined that Plaintiff Procter & Gamble Company and Subsidiaries ("P & G") improperly excluded receipts from intercompany transfers with the foreign members of its controlled group when determining "Gross Receipts" for the purposes of calculating its research tax credit. That is, during its audit of P & G's 2001–2005 years, The Internal Revenue Service ("IRS") issued a notice of proposed adjustment which reversed its prior position that all receipts from intercompany transfers be excluded. The IRS stated that intercompany transactions with foreign members of controlled groups should no longer be excluded from Gross Receipts, and that P & G's computations were incorrect. P & G paid the resulting additional tax to the IRS, and then commenced this civil action seeking, *inter alia*, a refund of those amounts.

P & G alleges that its research tax credit computation was proper because purely intercompany transactions are properly disregarded under 26 U.S.C. § 41(f) of the Internal Revenue Code and Treasury Regulation 26 C.F.R. § 1.41–6T(i). P & G claims that the IRS' subsequent decision to reverse its prior position contradicts the statute and the IRS' own regulations, and is contrary to the intent of Congress in enacting the research credit provisions.

Defendant alleges that 26 U.S.C. § 41(c)(6) specifically addresses what is to be included in Gross Receipts, and that this specific provision, rather than § 41(f), controls. Defendant claims that the plain language, legislative history, and case law regarding § 41(c)(6) establishes that, with respect to foreign members of the controlled group, the only exclusions from Gross Receipts are receipts from a foreign subsidiary corporation that are not "effectively connected to a trade or business in the United States. . . . " Defendant alleges that international intercompany transfers must therefore be included in Gross Receipts.

The sole issue that the cross motions seek to resolve is a legal one, *i.e.,* whether a taxpayer must include the results of its intercompany transactions within its "Gross Receipts" for the purposes of determining the amount of its research credit under 26 U.S.C. § 41.

## II.  UNDISPUTED FACTS [1]

1.  P & G is the common parent of an affiliated group of corporations that is engaged in the manufacture and sale of consumer products in the United States and throughout the world, under a variety of well-known brand names, such as Ivory, Tide. Bounty, Pantene, Pampers, Pringles, Charmin, Crest, and Iams. (Declaration of Deborah Moore ¶ 2).[2]

2.  P & G's business operations are divided among numerous separate subsidiary corporations, which perform different functions within P & G's business hierarchy.  (Moore Decl. ¶ 3.) As part of P & G's internal business operations, these subsidiary corporations regularly engage in intercompany transactions with one another. (*Id.*) For example, one of P & G's subsidiaries during the years at issue in this case was P & G Distributing, Inc., which was a Delaware corporation wholly owned by P & G. (*Id.* ¶ 4.) The primary business activity of P & G Distributing was the sale and distribution of P & G's products.  (Id.) To conduct that business, P & G Distributing regularly purchased P & G products at a standard intercompany price from other P & G subsidiaries whose business was to manufacture those products.[3]  (*Id.*) P & G Distributing then re-sold the products it had purchased from P & G's manufacturing subsidiaries to third-party customers (*e.g.*, retail stores that sell to consumers) or to other domestic and foreign subsidiaries owned by P & G in further intercompany transactions.  (*Id.*)

3.  During the years at issue in this case, in addition to P & G Distributing, P & G owned many additional subsidiaries which were engaged in the manufacture and sale of specific P & G products and which were members of P & G's "controlled group of corporations," as that term is defined in 26 U.S.C. § 41(f)(5).[4] (Moore Decl. ¶ 5.) These subsidiaries regularly engaged in intercompany transactions with one another as part of P & G's business operations. (*Id.*)

4.  During the tax years at issue in this case, P & G engaged in extensive research activities related to the development and improvement of new technologies and products.  (Moore Decl. ¶ 6.) As a result of these activities, P & G claimed research tax credits under 26 U.S.C. § 41(a) on its tax returns for the expenses incurred in connection with those research activities. (*Id.*)

5.  In calculating its research credit, P & G treated all members of its "controlled group of corporations" as a single taxpayer, as required by 26 U.S.C. § 41(f)(1). (Moore Decl. ¶ 7.) Consistent with this requirement, P & G aggregated its Research Expenses and Gross Receipts for the controlled group as a whole and excluded intercompany transactions when calculating the credit.  (*Id.*) This was the same methodology that had been accepted by the IRS in its prior audits of P & G's tax returns for prior tax years.  (*Id.*)

---

1.  These are the parties' common undisputed facts taken from Plaintiffs memorandum (*See* Doc. 43).  Defendant accepts these findings of fact as true or irrelevant (*See* Doc. 45).

2.  The Declaration of Deborah Moore (the "Moore Decl.") was filed contemporaneously with P & G's motion (Doc. 43).

3.  IRS regulations require that such intercompany transactions be completed at an arms-

length price.  *See generally* 26 C.F.R. § 1.482–1. The IRS has not challenged the intercompany prices used by P & G, and they are not at issue in this case.

4.  Generally, a corporation is deemed to be part of a "controlled group of corporations" if more than 50% of its stock is owned either directly or indirectly by a parent corporation. *See* footnote 7, supra.

6. In 2005, during the course of its audit of the tax years at issue in this case, the IRS requested documents from P & G showing how it determined its Gross Receipts in computing the credit. (Moore Decl. ¶ 9 & Exhs. A and B.) After receiving the requested documents from P & G, the IRS issued a written determination (dated August 29, 2005), in which the IRS adopted P & G's computations as correct. (*Id.* ¶ 11 & Exh. C.) In doing so, the IRS concluded that P & G had correctly excluded intercompany transactions in determining its Gross Receipts, including in particular those intercompany transactions with foreign members of its "controlled group." (*Id.* Exh. C, at 3.) The IRS determination provided in relevant part as follows:

> Chief Counsel Advice (CCA) 200233011 addresses the issue of sales to foreign subsidiaries in computing gross receipts for IRC section 41 purposes. Under the facts presented (which are similar to those of P & G) it was found that the taxpayer should EXCLUDE sales to majority owned foreign subsidiaries from gross receipts in both the fixed-base percentage and average annual gross receipts computations under IRC section 41.
>
> **CONCLUSION:**
>
> . . . .
>
> In accordance with Chief Counsel Advice 200233011, sales to foreign subsidiaries have been excluded from the gross receipts calculation.
>
> The research credit has been recalculated as stated above so that the base amount is now calculated in accordance with IRC section 41.

(Moore Decl. Exh. C, at 3 (capitalization emphasis in original)).[5]

7. On February 14, 2006, after the IRS audit team had made its determination to allow P & G's computation of Gross Receipts and Base Amount, the IRS Office of Chief Counsel issued a new Chief Counsel Advice, which revised the agency's position on Gross Receipts. *See* CCA 200620023, 2006 WL 1370917 (Feb. 14, 2006). The 2006 Chief Counsel Advice now took the position that a "controlled group" should "only disregard generally intra-group transfers with respect to research expenditures, not gross receipts." *Id.* However, the 2006 Chief Counsel Advice applies this new rule only in the context of "receipts from . . . foreign subsidiaries," not to receipts from domestic subsidiaries. *Id.* Also, for reasons that are not explained, the 2006 Chief Counsel Advice does not cite, or otherwise acknowledge, the 2002 Chief Counsel Advice—CCA 200233011 (2002 WL 1883657)—which the IRS' audit team had relied upon to conclude that "the taxpayer should EXCLUDE sales to majority owned foreign subsidiaries" in calculating its Gross Receipts. (Moore Decl. Exh. C, at 3.)

8. On January 16, 2007, following the issuance of the 2006 Chief Counsel Advice, the IRS audit team auditing P & G's returns issued a new notice of proposed adjustment, in which it reversed its prior determination on the basis stated in the 2006 Chief Counsel Advice. (Moore Decl. ¶ 12 & Exh. D.) That is, the IRS now claimed that intercompany transactions with foreign members of its controlled

---

**5.** The data provided by P & G to the IRS during the audit included in Gross Receipts certain rents, royalties and other revenues that were made includible in Gross Receipts under new IRS regulations issued in 2001. These amounts were not originally included in P & G's Gross Receipts computations at the time P & G filed its returns. These adjustments are not at issue in this case, but they are mentioned here to explain why the IRS determination quoted above refers to the fact that the credit had been "recalculated" and why the document states that the Base Amount was "now calculated in accordance with IRC Section 41."

group should no longer be "EX-CLUDE[D]" from Gross Receipts, and that P & G's computation of Gross Receipts and its Base Amount was therefore incorrect. (*Id.*)

9. Thus, for the 2001–2005 tax years, the IRS recomputed P & G's average annual Gross Receipts by adding foreign intercompany sales to P & G's Gross Receipts as follows:

| | 2001 | 2002 | 2003 | 2004 | 2005 |
|---|---|---|---|---|---|
| Gross Receipts (4-yr average) (P&G and IRS Aug. 2005 position) | $20,868,399,947 | $22,618,150,534 | $22,445,613,728 | $23,076,978,831 | $23,771,114,861 |
| Intercompany Transactions with Foreign Members | $2,387,269,584 | $2,363,945,252 | $2,553,599,960 | $2,847,213,604 | $2,971,082,067 |
| Revised Gross Receipts (4-yr average) (IRS Jan. 2007 position) | $23,255,669,531 | $24,982,095,786 | $24,999,213,688 | $25,924,192,435 | $26,742,196,928 |

(Moore Decl. ¶ 13 & Exh. D at ADM–24–0161 to ADM–24–0165.)

10. The IRS' recalculation, however, left unchanged P & G's treatment of intercompany sales to its domestic subsidiaries. (Moore Decl. ¶ 14). Receipts from domestic intercompany sales continued to be excluded from P & G's Gross Receipts. (*Id.*)

11. Based on its revised determination of P & G's Gross Receipts, the IRS recom-

puted P & G's Base Amount for the tax years at issue. (Moore Decl. ¶ 15). Because the Base Amount increases as Gross Receipts increase, the higher Gross Receipts amounts computed by the IRS had the effect of increasing P & G's Base Amount and thus reducing P & G's research credit. (*Id.*) The relevant adjustments are summarized in the following chart:

| | 2001 | 2002 | 2003 | 2004 | 2005 |
|---|---|---|---|---|---|
| Base Amount (P&G and IRS Aug. 2005 position) | $381,891,719 | $400,341,264 | $401,776,486 | $413,077,921 | $427,880,067 |
| Revised Base Amount (Jan. 2007 Position) | $411,625,351 | $427,193,838 | $432,486,397 | $448,488,529 | $465,314,227 |
| Difference | $29,733,632 | $26,852,574 | $30,709,911 | $35,410,608 | $37,434,160 |
| Reduction in Credit | $3,865,372 | $3,490,835 | $3,992,288 | $4,603,379 | $4,866,441 |

(Moore Decl. ¶ 15 & Exh. D, at ADM–24–0161 to ADM–24–0165.)

12. P & G paid the additional tax claimed by the IRS resulting from the credit reductions described above, and then commenced this civil action seeking a refund of those amounts.

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (1986).

### IV. RELEVANT STATUTES AND FORMULAS

The statutes and regulations relevant to this issue are Section 41 of the Internal Revenue Code and the Treasury Regulations § 1.41–6. Section 41 of the Internal Revenue Code defines the research credit formula, as follows:

**Research Credit = 20% X (Current Research Expense–Base Amount)[6]**

**Base Amount = Fixed Base Percentage X Average Gross Receipts[7]**
(Prior 4 years)

---

**6.** See 26 U.S.C. § 41(a)(1).

**7.** See 26 U.S.C. § 41(c)(1).

Fixed Base Percentage = *Research Expenses (1985–1989)* [8]

Fixed Base Percentage = Gross Receipts (1985–1989)

The other relevant subsections in Section 41 of the Internal Revenue Code are:

*26 U.S.C. § 41(c)(6):* Gross Receipts. For the purposes of this subsection, gross receipts for any taxable year shall be reduced by returns and allowances made during the taxable year. In the case of a foreign corporation, there shall be taken into account only gross receipts which are effectively connected with the conduct of a trade or business within the United States, the Commonwealth of Puerto Rico, or any possession of the United States.

*26 U.S.C. § 41(f):* Special rules. For purposes of this section—

(1) Aggregation of expenditures.

(A) Controlled group of corporations. In determining the amount of the credit under this section—

(i) all members of the same controlled group of corporations shall be treated as a single taxpayer . . .

The relevant portions of Treasury Regulations § 1.41–6T Aggregation of expenditures are as follows:

*§ 1.41–6T(b):* Computation of the group credit—(1) In general. All members of a controlled group are treated as a single taxpayer for purposes of computing the research credit. The group credit is computed by applying all of the section 41 [*26 USCS § 41* ] computational rules on an aggregate basis. All members of a controlled group must use the same method of computation . . .

*§ 1.41–6T(i):* Intra-group transactions—(1) In general. Because all members of a group under common control are treated as a single taxpayer for purposes of determining the research credit, transfers between members of the group are generally disregarded.

## IV. ANALYSIS

The sole issue the cross motions seek to resolve is a legal one, *i.e.*, whether a taxpayer must include the results of intercompany transactions in its "Gross Receipts" for purposes of determining the amount of its research credit under 26 U.S.C. § 41. Based upon (1) the plain language of the Internal Revenue Code and the Treasury Regulations, (2) the legislative history of the statutes, and (3) the inapplicability of the Defendant's case law, the Court finds that Plaintiff's motion for partial summary judgment should be granted, and Defendant's cross motion should be denied.

### A. The Plain Language of the Statute and the Regulations

Section 41 of the Internal Revenue Code is clear that "in determining the amount of the credit under this section—(i) all members of the same controlled group of corporations shall be treated as a single taxpayer", 26 U.S.C. § 41(f)(1)(A), and, therefore, intercompany transfers between members of the same group are to be disregarded. The applicable Treasury Regulations state that:

> Because all members of a group under common control are treated as a single taxpayer for purposes of determining the research credit, transfers between members of the group are generally disregarded.

26 C.F.R. § 1.41–6T(i) (2005).[9]

8. See 26 U.S.C. § 41(c)(3).

9. During the course of the tax years at issue in this case, the Department of the Treasury amended the regulations governing the re-

search credit several times. Although these amendments did not change the language of the regulation quoted above, they did cause it to be renumbered. The citation here is to § 1.41–6(T)(i), which is where the regulation

Consistent with the statute, "in determining the amount of the credit," P & G treated "all members of [its] controlled group of corporations . . . as a single taxpayer" by excluding intercompany transactions from its computation of Research Expenses and Gross Receipts. 26 U.S.C. § 41(f)(1)(A). P & G "disregarded" "transfers between members of the group" in the manner clearly delineated within the Treasury Regulations. 26 C.F.R. § 1.41–6T(i).

The IRS claims that intercompany sales to foreign subsidiaries must be included in Gross Receipts because the rule requiring intercompany transfers to be disregarded only applies "with respect to research expenditures, not gross receipts." *See* IRS, CCA 200620023, 2006 WL 1370917. This assertion lacks merit. Here, neither the statute nor the regulations distinguish between calculations of Research Expense and Gross Receipts. Furthermore, there is no statutory or regulatory basis upon which to draw the distinction between international intercompany transfers and domestic intercompany transfers that the IRS seeks to draw.

### 1. Distinction between Research Expense and Gross Receipts

Section 41(f)(1) of the Internal Revenue Code states that the "single taxpayer" provisions are applicable to the entire credit calculation, not simply to the determination of Research Expenses. Research Expenses are only one component of the formula for determining the credit, and the statute states that "in determining the amount of the credit under this section—(i) all members of the same controlled group of corporations shall be treated as a single taxpayer." 26 U.S.C. § 41(f)(1)(A). In order to determine the amount of the credit

from this section, it is necessary to compute both Gross Receipts and Research Expenses. Thus, the language implies that both Gross Receipts and Research Expenses should be determined on a "single taxpayer" basis.

Section 1.41–6T(i) of the Treasury Regulations is applicable in the same broad terms. This Section states that "[b]ecause all members of a group under common control are treated as a single taxpayer for purposes of determining the research credit, transfers between members of the group are generally disregarded." 26 C.F.R. § 1.41–6T(i). This provision does not provide a basis differentiating between Research Expenses and Gross Receipt, but rather, it offers a clear positive pronouncement that such intercompany transfers should be disregarded from the calculation.

Section 1.41–6T(b)(1) of the regulations also explicitly confirms that the "single taxpayer" rule of Section 41(f)(1)(A) is applicable to all of the research credit computations under Section 41, not simply the computation of research expenditures. Section 1.41–6T(b)(1) of the regulations provides:

> All members of a controlled group are treated as a single taxpayer for purposes of computing the research credit. The group credit is computed by applying all of the section 41 computational rules on an aggregate basis. *Id.*

The regulation then includes examples which imply that the calculation of Gross Receipts is one of the "section 41 computational rules" that must be applied on a "single taxpayer," aggregate basis in the context of a "controlled group." The regulation provides examples related to this issue. Example 1 states that the controlled group's Base Amount is "the

---

was codified during the last tax year at issue in this case, i.e., P & G's 2005 tax year, which ended June 30, 2005. See 26 C.F.R. § 1.41–

6(T)(j) for regulation effective for taxable years ending on or after May 24, 2005.

group's fixed-base percentage ... multiplied by the group's *aggregate* average annual gross receipts for the 4 taxable years preceding the credit year." 26 C.F.R. § 1.41–6T(e), Example l(ii)(B)(1) (emphasis added). Thus, section 1.41–6T(e), like section 1.41–6T(i), establishes that the "single taxpayer" rule applies equally to computations of Gross Receipts, and not simply to research expenditures.

Although the United States argues that Section 41(f) deals with expenditures rather than Gross Receipts, the subsection heading labeled "Aggregation of Expenditures" was created when the statute was first enacted in 1981. At this point, the research credit was determined solely by reference to prior-year expenditures, and the Gross Receipts component to the calculation was not added to the statute until 1989. The IRS' regulations make clear at section 1.41–6T that Gross Receipts should be aggregated in the same manner as Research Expenses, despite the fact that the declaration continues to appear under the "Aggregation of Expenditures" heading. Thus, a plain language interpretation of the statute and regulations reveals that intercompany transfers should indeed be disregarded per P & G's original calculation.

### 2. International and Domestic Intercompany Transfer Distinction

There is no basis for distinguishing, in the manner that the IRS attempts, between intercompany transactions with foreign subsidiaries and intercompany transactions with domestic subsidiaries. The rationale behind excluding intercompany transactions in general is straightforward: intercompany sales do not represent sales to the company's customers, but rather, they serve only administrative or legal purposes internal to the business itself. Including intercompany transfers within the Gross Receipts calculation for the research credit could result in double, triple,

or other such multiple counting of transfers. This rationale applies as strongly to international intercompany transfers as it does to domestic intercompany transfers, and neither the statute (Section 41(f)(1)) nor the regulations (26 C.F.R. § 1.41–6T(i)) provide any basis upon which to draw such a distinction.

The IRS is therefore not applying a rule that distinguishes between intercompany Research Expenses on the one hand and intercompany Gross Receipts on the other. Rather, it is including one type of intercompany receipt (receipts from foreign affiliates) in the Gross Receipts calculation while excluding other types of intercompany receipts (receipts from domestic affiliates). The IRS first argues that the Gross Receipts calculation is not to be made using the Section 41 "single taxpayer" rule because this rule applies only to Research Expenses, but then states that the Gross Receipts calculation is to be made using the Section 41 "single taxpayer" rule when domestic rather than international intercompany transactions are involved. This distinction between domestic and international intercompany transfers appears arbitrary given the lack of statutory support for it, and militates in favor of disregarding all forms of intercompany transfers from the Gross Receipts calculation.

### B. The Legislative History of the Statute

Although the plain language of the statute and regulation is dispositive of this case in favor of the plaintiff, a discussion of the legislative history of Section 41 of the Internal Revenue Code reveals that P & G's decision to exclude intercompany transfers with its international members is consistent with the credit's intended incentive effect. The Gross Receipts component was added to the research credit provision in 1989; prior to the amendment,

the Base Amount had been determined on a rolling three-year basis based solely on the taxpayer's Research Expenses during that time period. The amendment fixed the base period at the 1985–1989 years, and indexed "each taxpayer's base amount to average growth in its gross receipts." H.R. No. 101–247, reprinted at 1989 U.S.C.A.A.N.1906, 2669. The House Budget Committee report explained the reasons for using the Gross Receipts as the appropriate index:

> Because businesses often determine their research budgets as a fixed percentage of gross receipts, it is appropriate to index each taxpayer's base amount to average growth in its gross receipts. By so adjusting each taxpayer's base amount, the committee believes the credit will be better able to achieve its intended purpose of rewarding taxpayers for research expenses in excess of amounts which would have been expended in any case.

Thus, the intent of the research credit is to reward research expenditures by measuring these expenditures against a relevant and determinate comparator: Gross Receipts. Including international intercompany transfers is inconsistent with this rationale because it would double count (at least) transactions which are merely administrative or legal in nature, thereby highlighting an irrelevant measurement. Businesses do not "determine their research budgets" as a percentage of intercompany sales receipts, and including intercompany transfers in the research tax credit would introduce a factor wholly unrelated both to research expenditure decisions and the credit's incentive effect.

### C.  Case Support

The Defendant relies on two inapposite cases, *Deere & Co. v. Commissioner*, No. 20320–06, 133 T.C. No. 11 (Oct. 22, 2009), and *Union Carbide Corp. v. Commissioner*, No. 11119–99, T.C. Memo 2009–50, 2009 WL 605161 (Mar. 10, 2009), to argue that the legislative intent and the plain meaning interpretation of Section 41 weigh in favor of including international intercompany transfers in the Gross Receipts calculation. However, neither case involves intercompany transactions, and neither case has any significant bearing on this issue.

*Deere* established that a taxpayer is required to include in its Gross Receipts the sales the taxpayer made to third parties in foreign countries through its foreign branches. The taxpayer argued that sales to third parties through its foreign branches ought to be excluded from gross receipts because § 41(c)(6) provides for that result with respect to analogous foreign sales made by foreign corporations. Specifically, § 41(c)(6) reads:

> For the purposes of this subsection, gross receipts for any taxable year shall be reduced by returns and allowances made during the taxable year. In *the case of a foreign corporation, there shall be taken into account only gross receipts which are effectively connected with a trade or business within the United States,* the Commonwealth of Puerto Rico, or any possession of the United States.

26 U.S.C. § 41(c)(6) (emphasis added). The IRS argues that *Deere* supports the interpretation that by specifically excluding Gross Receipts not "effectively connected with the conduct of a trade or business in the United States" from the calculation of Gross Receipts, Congress clearly expressed its intent to include in the research credit calculation all other transactions involving foreign subsidiary corporations, including transfers between a U.S. taxpayer and its foreign subsidiary corporation.

*Deere* is not directly relevant to this case because this case involves specific statutory and regulatory provisions—26

U.S.C. § 41(f)(1) and 26 C.F.R. § 1.41–6T(i)—which require intercompany transactions to be disregarded. The IRS first argues that § 41(c)(6) is the only provision of the research tax credit statute that may affect the computation of Gross Receipts, a premise unsupported by either a plain or historical reading of the statute, and then cites *Deere* as a means of establishing Congressional intent to include within Gross Receipts any international transactions not specifically excluded by § 41(c)(6). However, it is inaccurate to extend *Deere's* logic from international third party sales to international intercompany transfers because these transactions are fundamentally different. Furthermore, specific statutory and regulatory provisions require intercompany transactions to be disregarded. P & G's position is not even at odds with § 41(c)(6), which does not define Gross Receipts to include intercompany transfers. P & G does not seek to expand § 41(c)(6) or any other statutory provision beyond its express textual limitations, as the court found with respect to the taxpayer in *Deere*. Because P & G's claim pertains to international intercompany transactions specifically controlled by statute and regulation, its position does not create any conflict with the precedent set in *Deere*.

The Government's reliance on *Union Carbide* also has little bearing on this case. *Union Carbide* held that the "consistency" requirement of § 41(c)(4) should be applied to individual members of the controlled group rather than the group as a whole. (Gov't Mem. at 11.) However, this case is not about the consistency requirement. The court's reasoning in *Union Carbide* was based on the specific and unique language of § 41(c)(4), which the

court concluded would "create [ ] an anomaly" if it were read to apply on a group-wide basis. See *Union Carbide*, 2009 WL 605161, at *100. In particular, the court pointed to the provisions of § 41(c)(4), pertaining to changes in methods of accounting, which "refer [ ] only to a single accounting method." *Id.* This, the court held, was inconsistent with a group-wide approach, because "[t]axpayers that are part of a commonly controlled group may have different methods of accounting." *Id.* In the present case, on the other hand, the Government has not pointed to any "anomaly" created from applying the single taxpayer rule to disregard intercompany transactions. Indeed, this is expressly the result contemplated by the regulations under § 41(f).

## IV. CONCLUSION

Based on the evidence of record, the Court finds that there are no genuine issues of material fact for trial, and that Plaintiff is entitled to judgment as a matter of law relating to the Gross Receipts research credit issue. Accordingly, Plaintiff's motion for partial summary judgment (Doc. 43) is **GRANTED,** and Defendant's cross motion for partial summary judgment (Doc. 66) is **DENIED.**[10]

**IT IS SO ORDERED.**

---

10. Determination of the Gross Receipts research credit issue resolves one of the six claims raised in Plaintiff's complaint. The parties stipulated at the outset of this case that they would submit an agreed calculation of any refund owed to P & G resulting from the Court's legal rulings. (*See* Doc. 19, at 12).